UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


PEARL CARUSO, ET AL.                    CIVIL ACTION

VERSUS                                  NO.  06-2613

ALLSTATE INSURANCE COMPANY,             SECTION "R"(5)
ET AL.


**ORDER AND REASONS**

Defendants in the above-captioned action have moved for dismissal of plaintiffs' claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.  After those motions were filed, all but one of the defendants joined with plaintiffs to request a stay in this litigation pending an appeal to the United States Court of Appeals for the Fifth Circuit in a related case. For the following reasons, the Court DENIES the motion to stay and GRANTS in part and DENIES in part defendants' motions to dismiss.


**I.    BACKGROUND**

Plaintiffs here are six Louisiana property owners who suffered substantial damage to their property during Hurricane Katrina and who have sued their insurance providers under their

homeowner's policies.  The named plaintiffs each sued a different insurance company seeking to represent all other similarly situated class members, namely Louisiana homeowners who suffered a total loss of their property, in whole or in part, as a result of a covered loss from the winds of Hurricane Katrina.  The six defendant insurance companies are: Allstate Insurance Company, State Farm Insurance Company, Republic Fire & Casualty Insurance Company, Auto Club Family Insurance Company, Lafayette Insurance Company,[1] and Louisiana Citizens Property Insurance Company. Plaintiffs seek recovery based on Louisiana's Valued Policy Law, La. Rev. Stat. § 22:695, as well as claims of breach of contract and bad faith under La. Rev. Stat. §§ 22:658 and 22:1220. Specifically, plaintiffs assert that the insurers placed a valuation on their respective properties for premium purposes and did not pay the full value of those properties after they became a total loss.  They allege that the total loss was caused in whole or in part by a covered peril and that the insurers were obligated to pay the full value of their policies under the VPL.

The named plaintiffs initially filed this lawsuit, seeking class certification, in Civil District Court for the Parish of Orleans on April 12, 2006.  Defendant Allstate filed a Notice of

---

[1] Lafayette was incorrectly named as United Fire Insurance Company in the plaintiffs' complaint.

Removal on May 19, 2006, asserting that this Court has jurisdiction under the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005), or, in the alternative, under 28 U.S.C. § 1332 because the other insurers were joined improperly with Allstate and thus their citizenship should not be considered when determining jurisdiction.  On June 16, 2006, plaintiffs moved to remand, alleging that removal was improper because CAFA's "local-controversy" exception applied, and the nondiverse defendant, Louisiana Citizens Property Insurance Company, was joined properly with the other defendant insurance companies.  On January 8, 2007, the Court denied plaintiffs' remand motion, finding that it has jurisdiction over this matter under CAFA because the statute's "local-controversy" exception did not apply to this action.

Defendants Allstate, Auto Club, Lafayette, Republic Fire, and State Farm now move to dismiss the matter by essentially re-urging the arguments raised in *Chauvin, et al. v. State Farm Fire & Casualty Co., et al.*, 450 F. Supp. 2d 660 (E.D. La. 2006). Namely, defendants assert that the VPL cannot be the basis for plaintiffs' relief because: 1) the VPL applies only to damage caused by fire; 2) even if the VPL extends to perils other than fire, it does not allow full recovery when the covered peril caused only a partial loss of the covered property; 3)

3

plaintiffs' interpretation of the VPL would violate Louisiana's filed rate doctrine; 4) plaintiffs' interpretation of the VPL would violate both the Louisiana and United States constitutions; and 5) plaintiffs' VPL claims are necessarily preempted by federal law under the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129.

Following the filing of these motions to dismiss, all parties to this litigation, with the exception of defendant Auto Club, filed a joint motion to stay this litigation, including ruling on the pending motions before the Court.  The parties assert that the issues presented here may be addressed by the Fifth Circuit in *Chauvin, et al. v. State Farm Fire & Casualty Co., et al.*, which is presently on appeal before that court, thus obviating the need for the Court to rule on the motions to dismiss at this time.

After considering the parties' submissions and relevant Louisiana law, the Court finds that a stay is not appropriate at this time and that relief under the VPL is not foreclosed for all of the members of the proposed plaintiffs' class.

## II.  LEGAL STANDARD

### A.   Motions to Dismiss Under Rule 12

In a motion to dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to plaintiffs.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The Court will generally not look beyond the face of the pleadings to determine whether dismissal is warranted under Rule 12.  Fed. R. Civ. P. 12(b); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (consideration of documents outside the pleadings requires converting the motion to one for summary judgment).  However, uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment, even when these documents are not physically attached to the complaint.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002).  The Court must resolve doubts as to the sufficiency of the claim in plaintiffs' favor.  *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  Dismissal is warranted if it appears certain that plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir. 2005).

**B.   Interpreting Louisiana Law**

When a federal court must interpret a Louisiana statute, it must do so according to the principles of interpretation followed by Louisiana courts. *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991). In Louisiana, the sources of law are legislation and custom. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (quoting La. Civ. Code art. 1*)*. In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (quoting *Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999)). To make an "Erie guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**III. DISCUSSION**

**A.    Joint Motion to Stay**

On January 26, 2007, all of the parties with the exception of defendant Auto Club moved this Court to stay this litigation, pending the completion of the initial appellate briefing in *Chauvin, et al. v. State Farm Fire & Casualty Co., et al.*, which is currently on appeal to the Fifth Circuit.  The parties suggest that the legal issues before the Fifth Circuit in the *Chauvin* appeal are parallel to those in this matter, and thus the appeal may resolve this matter without any need for the Court to further examine and decide issues in this case.

The Court finds that a stay is inappropriate at this time because the claims raised in plaintiffs' state court petition were not fully resolved by the *Chauvin* opinion.  In *Chauvin*, the Court was not asked to, and consequently did not, address the application of the Valued Policy Law to claims based on the allegation that a covered peril was the proximate cause of a plaintiff's total loss.  Because plaintiffs here assert a proposed class that includes homeowners who allegedly suffered a total loss caused "in whole" by a covered peril, the *Chauvin* decision does not dispose of the claims asserted by all of the potential class members.  The Court therefore sees no reason to delay ruling on this issue.

**B.    The Valued Policy Law**

7

Louisiana's Valued Policy Law was originally enacted in 1900, "in order to secure greater certainty in the contract of insurance."  *See New Orleans Real Estate Mortgage & Sec. Co. v. Teutonia Ins. Co. of New Orleans, et al.*, 54 So. 466, 473 (La. 1910).  The statute remained in effect, with minor adjustments in its language, until 1988 when it was repealed.  It was reenacted in 1991 with some changes to its language.  The current version states, in relevant part:

> A. *Under any fire insurance policy insuring inanimate, immovable property in this state*, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, *in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset*, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. . . .
>
> B. Any clause, condition, or provision of a policy of fire insurance contrary to the provisions of this Section shall be null and void, and have no legal effect. . . .

La. Rev. Stat. § 22:695 (emphasis added).  Louisiana's Valued Policy Law is contained within Chapter 1, Part XV of the Insurance Code, titled "Standard Fire Policy."  La. Rev. Stat. § 22:691-696.  Section 22:691(A) states that "[t]he printed form of a policy of fire insurance, as set forth in Subsection F shall be

known and designated as the 'standard fire insurance policy of
the State of Louisiana.'"  La. Rev. Stat. § 22:691(A).  The form
provides for insurance "against all DIRECT LOSS BY FIRE,
LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS
INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED .
. . ."  La. Rev. Stat. § 22:691(F) (capital letters in original).
The form also provides that insurance against any other peril
"shall be by endorsement in writing hereon or added hereto."  *Id*.
In addition, Section 22:691(F) sets forth the insured's and
insurer's obligations under the standard fire policy contract.

Despite its title, this part of the Insurance Code does not
deal exclusively with fire insurance.  Section 22:691(E)
regulates multi-peril policies that include coverage for the
peril of fire.  Section 22:691(E)(1) permits insurers to insure
perils other than fire by "appropriate forms of other contracts
or endorsements" used "in connection with a standard fire
insurance policy."  La. Rev. Stat. § 22:691(E)(1).  This
provision allows the policy forms to state separately the amounts
of insurance and premium rates for the coverage under the
Standard Fire Policy and the other coverages included in the
policy.  *Id.*  It also permits other coverages to contain
provisions inconsistent with those in the Standard Fire Policy so
long as they are applicable only to the other coverages.  *Id.*

Section 22:691(E)(2) deals with policies that cover fire and other perils for a single premium.  Under four circumstances, these policies need not comply with the provisions of the Standard Fire Policy as set forth in Sections 22:691(A), (B), and (F).  La. Rev. Stat. § 22:691(E)(2).  They are:

> (1) [S]uch policy or contract shall afford coverage, with respect to the peril of fire, not less than the coverage afforded by said standard fire policy, (2) the provisions in relation to mortgagee interests and obligations in said standard fire policy may be incorporated therein without change, (3) such policy or contract is complete as to all of its terms without reference to the standard form of fire insurance policy or any other policy, and (4) the commissioner is satisfied that such policy or contract complies with the provisions hereof.

*Id.*  Finally, Section 22:696 mandates that, for all commercial fire insurance policies issued in Louisiana, insurers must provide in writing at the front of their policies an insert detailing "which coverages are included in the policy for which the insured has paid premiums.  The insurer shall disclose whether or not the insured has coverage for flooding or mold and whether an increased deductible is required for hurricane damage."  La. Rev. Stat. § 22:696.

## C.  Perils Other Than Fire

As in *Chauvin*, defendants assert that the plain language and history of the VPL demonstrate that it applies only to the peril of fire and that federal courts have found that the VPL applies

only to the peril of fire.  Plaintiffs contend that the term "any fire insurance policy" in the VPL refers to any homeowner's insurance policy in Louisiana that covers fire and other perils, such as wind.  Plaintiffs assert that the term "fire policy" is broadly used in the insurance industry to refer to a homeowner's policy and that Louisiana state courts and the United States Court of Appeals for the Fifth Circuit have applied the VPL to losses caused by perils other than fire.

The Court must begin its analysis with the plain language and structure of the statute.  *See Coserv Ltd. Liab. Corp. v. Sw. Bell Tel. Co.*, 350 F.3d 482, 486 (5th Cir. 2003).  From the face of the statute, it is clear that the VPL applies to "any fire insurance policy insuring inanimate, immovable property in [Louisiana]" that contains a valuation of the covered property to be used for determining the policy premiums.  La. Rev. Stat. § 22:695.  It is alleged that the policies at issue contain such a valuation.  Thus, the crux of the issue is whether the phrase "any fire insurance policy" means the VPL applies to all of the covered perils in plaintiffs' homeowner's policies, including wind, and not just the peril of fire.

Louisiana's rules of statutory interpretation are contained in La. Civ. Code. arts. 9-13.  These principles guide the Court's analysis of the terms of the VPL.  First, when a law is clear and

unambiguous and its application does not lead to absurd
consequences, the Court is prohibited from any further analysis
and must apply it as written.  La. Civ. Code art. 9.  When
statutory language is ambiguous, the Court must look to the
context of the law as a whole to determine its meaning.  *Id*. at
art 12.  If the statute is susceptible of multiple meanings, it
must be interpreted as having the meaning that best conforms to
the purpose of the law.  *Id*. at art. 10.  Finally, statutory
words must be given their generally prevailing meaning.  *Id*. at
art. 11.

As an initial matter, the term "any fire insurance policy"
as used in the VPL is ambiguous.  The statute can be read, as
defendants contend, to apply only to the peril of fire.
Defendants rely on provisions in the same chapter referring to
"the standard fire policy," "policy of fire insurance," "loss by
fire," and "a fire insurance policy" to suggest that the chapter
is concerned only with fire insurance, hence the reference in
Section 22:695 is only to fire coverage.  Additionally, they rely
on Section 22:694, which states that "no policy of fire,
lightning, *or windstorm insurance* . . . shall contain any clause
or provisions requiring the insured to take out or maintain a
larger amount of insurance than that covered by such policy . .
." to argue that if the legislature intended Section 22:695 to

12

cover the peril of wind, it could have expressly done so by its plain language.  *See* La. Rev. Stat. § 22:694 (emphasis added).

In contrast, the VPL statute can also be read, as plaintiffs contend, to apply to all of the covered perils in any policy that also covers the peril of fire.  Under this view, the VPL applies to "any fire insurance policy" that places a valuation on a property and uses that valuation to determine the premium, regardless of the form it takes.  A multi-peril policy that covers fire thus comes within the meaning of "any fire insurance policy."  In support of their position, plaintiffs point to the history of the multi-peril "homeowner's policy," which they assert originated by using the single-peril fire policy as a template to expand coverage to other perils through the same policy form.

After considering the context and purpose of the VPL and the relevant case law interpreting the statute, the Court finds that the VPL applies to covered perils other than fire in a multi-peril policy that provides fire insurance.  The VPL is an independent provision that is imposed on "any fire insurance policy" to deal with the specific situation in which there is a total covered loss of a property on which the insurer has placed a valuation and used that valuation for determining the premium. The VPL is not written into the terms and conditions of the

13

Standard Fire Policy set forth in Section 22:691(F) and is not part of Section 22:691, which deals with the mandatory provisions of the Standard Fire Policy. Rather, the VPL applies to any policy that qualifies as a "fire insurance policy," that is, it applies to any policy that includes the peril of fire and not exclusively to the peril of fire. This interpretation is buttressed by the fact that, while Section 22:691 instructs how an insurer can contract around the provisions of the Standard Fire Policy with respect to other coverages, it does not refer to contracting around Section 22:695. Instead, the VPL contains its own mechanism for insurers to use to contract around its provisions. Specifically, an insurer must set forth in the policy and in any application therefor "in type of equal size" the actual method of loss valuation in order to have a provision inconsistent with the VPL. La. Rev. Stat. § 22:695.

In addition to the structure of the statute, this reading makes common sense. In the homeowner's policies at issue, the insurers placed only one value on the property and correspondingly charged only one premium for all of the perils covered in the homeowner's policy, including fire. The VPL says that unless the contract and the application therefor clearly state otherwise, this is the only valuation of the property in the event of a total covered loss. It should logically follow

14

that this valuation determines the amount to be paid by the insurer in case of a total loss, regardless of the cause so long as it was a covered peril.  But, under the defendants' argument, the insurer can value the total loss differently based on different perils even though the insurer collects but one premium for all perils based on a single valuation of the property.  In other words, so long as a covered peril other than fire caused the total loss, the insurer could pay the insured an amount less than the value it placed on the property in the policy and used to calculate the policy premium.  Such a result does not square with the purpose and context of the statute, nor does it make sense.  The purpose of the VPL was to protect the insured and remove any doubt as to the value of the property that would be used to compensate the insured in the event of a total loss.  *See generally Atlas Lubricant Corp. v. Fed. Ins. Co.*, 293 So. 2d 550, 556 (La. Ct. App. 1974) (VPL designed to protect insureds); *see also New Orleans Real Estate Mortgage & Sec. Co.*, 54 So. at 473 (VPL intended to create greater certainty in insurance contracts).  Defendants' proposed interpretation runs counter to these purposes.

Furthermore, the case law supports this reading of the VPL. The Fifth Circuit endorsed the application of the VPL to perils other than fire in *Real Asset Management, Inc. v. Lloyd's of*

*London*, 61 F.3d 1223 (5th Cir. 1995).  There, the plaintiff, whose property was damaged by rain and wind from Hurricane Andrew, sued the insurer for failing to pay the full value of its policy even though the property suffered a total loss.  The insurer took the position that the property owner paid less than half the policy value for the property shortly before the storm so that it should not have to pay the policy value when the property became a total loss.  The Fifth Circuit relied on Section 22:695 to reject this argument:

> The defendants argue that allowing the plaintiffs to recover the policy limits gives them a windfall when they paid less than half that as the purchase price a month before the storm.  However, as the defendants testified, they would not accept it as the value of the property for insurance purposes.  Under Louisiana Valued Policy Law, if the insurer bases the premium on its valuation of the property, then in the event of a total loss, the insurer shall pay the actual cash value, or in other words, the policy amount. The value that is determinative is the value placed on the property by the insurance company.  Moreover, it was the insurance company's own formulation that ultimately set the policy amount.

*Id.* at 1228 (citations omitted).  The *Real Asset Management* decision illustrates the Fifth Circuit's view that the VPL applies to a total loss caused by a covered peril other than fire.

Likewise, in *Holloway v. Liberty Mutual Fire Ins. Co.*, 290 So. 2d 791 (La. Ct. App. 1974), a Louisiana appellate court specifically invoked Section 22:695 to resolve a dispute that

16

involved a covered peril other than fire.  The plaintiffs in
*Holloway* made a claim under their homeowner's policy for damages
to their carpet caused by a leaky pipe.  *Id.* at 793.  The court
ruled that the plaintiffs' policy did not allow for deducting
depreciation when calculating the amount due, as the appropriate
standard, found in both the policy and the statutory law, was
"the actual cash value at the time of loss, but not exceeding the
amount it would cost to repair or replace the property with
material of like kind and quality." *Id.* at 794-95.  The court
quoted the version of section 22:695(B) in effect at the time,
which provided that the proper measure of damages for partial
loss was an amount sufficient to "permit the insured to restore
the damaged property to its original condition." *Id.* at 795.
That version of Section 22:695 applied to "any fire insurance
policy," as is the case here.  *Id.* at 794.  Implicit in the
*Holloway* court's reasoning, therefore, is an understanding that
the term "any fire insurance policy" in the VPL applies to any
covered peril included in a policy that also provides coverage
for fire.

Furthermore, in *Rodriguez v. Nw. Nat. Ins. Co.*, 358 So. 2d
1237 (La. 1978), the Louisiana Supreme Court expressly endorsed
the reading of the term "fire insurance policy" to include
policies that cover multiple risks.  There, the court applied the

17

"anti-technical" provisions of Section 22:692 to a "special floater policy," covering fire and other perils.[2]  The anti-technical provision states that "no policy of fire insurance" may be voided for breach of warranty.  The insurer denied coverage and argued that the insured's violations of the warranty voided the coverage.  *Id*. at 1239.  The insured invoked Section 22:692. *Id*.  In response, the insurer contended that Section 22:692 did not apply to the contract because the contract was designated as a "special floater policy."  *Id*. at 1241.  The court rejected this contention, holding that La. Rev. Stat. § 22:692

> does not apply exclusively to contracts which insure solely against loss through fire.  It applies as well to warranty conditions upon fire insurance coverage included in contracts of insurance which cover a variety of risks.  This Court has previously applied the statute to a policy covering accident and theft in addition to fire losses.

---

[2] Section 22:692 reads in pertinent part:

> No *policy of fire insurance* issued by any insurer on property in this state shall hereafter be declared void by the insurer for the breach of any representation, warranty or condition contained in the said policy or in the application therefor.  Such breach shall not avail the insurer to avoid liability unless such breach (1) shall exist at the time of the loss, and be either such a breach as would increase either the moral or physical hazard under the policy, or (2) shall be such a breach as would be a violation of a warranty or condition requiring the insurer to take and keep inventories and books showing a record of his business.

La. Rev. Stat. § 22:692 (emphasis added).

*Id.* (*citing Lee v. Travelers Fire Ins. Co.*, 53 So. 2d 692 (1951)).  Thus, the *Rodriguez* decision stands for the broader application of Section 22:692, based on the court's reading of the term "policy of fire insurance," to any insurance contract that includes fire coverage.

The Louisiana Supreme Court has also held that, in the absence of specific language to the contrary, provisions in the Standard Fire Policy chapter are read as applying equally to the peril of fire and other covered perils.  In *Grice v. Aetna Cas. & Sur. Co.*, 359 So. 2d 1288 (La. 1978), the court found that the prescriptive period set forth in Section 22:691(F)(2)[3] applied to "coverages and perils other than fire and lightning when those other coverages and perils are made part of the prescribed standard fire policy," unless the other perils were otherwise limited by the terms and conditions of the policy.  *Id.* at 1291. Because the "homeowners policy attached to the standard fire policy [had] no provision prescribing the time for filing suit on

[3] The relevant part of the standard fire policy reads:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss.

La. Rev. Stat. 22:691(F)(2).

a loss," the time limit in the standard fire policy applied to the theft and burglary insurance provided under plaintiff's homeowner's policy. *Id.; see also Smith v. Metro. Prop. & Cas. Ins. Co.*, 868 So. 2d 57 (La. Ct. App. 2003) (applying the prescriptive period in 22:691(F) to a homeowner's policy). The court also articulated a common-sense rationale for its holding:

> The homeowners policy is attached to the standard fire policy. Both are included under the heading "Homeowners Policy". In fact the homeowners policy is so essentially "connected" to the standard fire policy, that it would not be coherent standing alone, because the form of the policy and the coverages section contemplates both as part of one policy.

*Grice,* 359 So. 2d at 1291. This reasoning applies with equal force to this Court's interpretation of "any fire insurance policy" in Section 22:695. The standard fire policy and the broader homeowner's policies are so intertwined that Section 22:695 should be read as applying to both the fire peril and other covered non-fire perils, unless the insurer takes the required steps to avoid the application of the statute.

The legislature's recent enactment of Section 22:696 further supports the Court's reading of Section 22:695 as a separate provision that applies to any policy that covers the peril of fire, not simply the peril of fire. Again Section 22:696 reads, in relevant part:

> No *fire insurance policy* which provides coverage for damage to property shall be delivered or issued for

> delivery in this state with respect to any commercial
> property unless the insurer advises the insured in
> writing, prominently displayed on a form developed
> and promulgated by the commissioner of insurance, as
> an insert in the front of the policy as to which
> coverages are included in the policy for which the
> insured has paid premiums.  The insurer shall
> disclose whether or not the insured has coverage for
> flooding or mold and whether an increased deductible
> is required for hurricane damage.

La. Rev. Stat. § 22:696 (emphasis added).  The legislature clearly used the term "fire insurance policy" here to apply to and regulate the provisions of any multi-peril policy that includes fire coverage.  It makes no sense to construe the term differently in Section 22:695.

Additionally, the cases on which defendants rely to support their contention that Section 22:695 applies only to the covered peril of fire are unpersuasive.  In *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376 (5th Cir. 1987), the Fifth Circuit held that the "anti-technical" language of section 22:692 did not apply to a policy covering a capsized "jack up" vessel operating offshore. The court first noted that "[b]ased upon the language of the statute itself, the provision would appear to apply to fire policies only."  *Id*. at 381.  The court reviewed state court decisions applying the statute and could not find "any Louisiana case law to the effect that La. R.S. § 22:692 should be applied to any other than fire losses covered by a policy for insurance covering losses due to fire."  *Id*. at 382 (also noting that the

21

Standard Fire Policy provides "a working definition of a fire loss"). The court concluded that "the losses which form the basis of this suit cannot be construed as losses due to fire, and the insurance policies in question are not fire insurance policies," and it thus did not apply Section 22:692. *Id*. Because neither condition was met, it is unclear which condition the *Graham* court found dispositive. Regardless, that the insurance policy was not a "fire insurance policy" under either interpretation of the term urged by the parties in this case renders the holding in *Graham* inapposite to the instant motion.

More recently, in *In re Consolidated Cos.*, 185 B.R. 223 (E.D. La. 1995), *aff'd* 106 F.3d 396 (5th Cir. 1996), another court in the Eastern District considered whether the VPL applied to coverage for non-fire perils within an "all risk commercial property insurance policy" issued in 1988. The property in question was damaged by acts of vandalism and theft, and the insured wanted the court to apply the version of the VPL in effect at the time the policy was issued, which specified damages in the event of a partial loss. *See* La. Rev. Stat. Ann. § 22:695 (repealed 1988). The perils of fire, vandalism, and theft were covered under the policy at issue. *Consolidated Cos.*, 185 B.R. at 225. The court found that it was bound to "read the standard fire policy provisions into the fire coverage of any type of

policy," including one covering multiple perils by the language of sections 22:691.2 and 22:691(E). *Id.* at 225-26.  However, because it found the requirements of Section 22:691(E) were satisfied, the court found that "Sections A and B of R.S. 22:691, which . . . would also trigger the application of R.S. 22:695 for valuation purposes, need not be complied with, with respect to the non-fire perils covered by the policy."  The court thus held that "the valuation provisions of R.S. 22:695 should not be read into the Sun policy coverage for theft and vandalism, which are triggered by the loss suffered in this case."  *Id*. at 226 (*citing Graham, supra*).

     This Court respectfully declines to apply the reasoning in *Consolidated Companies* to the case at hand.  As an initial matter, the facts in *Consolidated Companies* are distinguishable from those in this case.  Most particularly, the dispute in *Consolidated Cos*. involved a partial loss, not a total loss, as here.  However, even if the facts were similar, the Court would not reach the same result.  In holding that the provisions in Section 22:695 do not apply to losses caused by non-fire perils, the court rested its conclusion on its interpretation that when a policy satisfies Section 22:691(E), so that it need not comply with Sections 22:691(A), (B), and (F) (*i.e.*, the mandatory provisions of the Standard Fire Policy), this means that it need

not comply with Section 22:695.  The court did not explain how it reached this conclusion.  The statute uses "Standard Fire Policy" as a term of art to apply to the provisions in Sections 22:691(A), (B), and (F).  Those provisions set forth the designation and form of the standard fire insurance policy in Louisiana, without any reference to Section 22:695 or any other section in the same Chapter.  Furthermore, Section 22:691(E) permits non-fire coverage provisions to be inconsistent with only (A), (B), and (F), not with Section 22:695.  Rather, Section 22:695 has its own escape hatch as discussed above.  Section 22:695 is thus an independent provision in the Insurance Code, which by its terms is not restricted to the Standard Fire Policy as expressly defined in Section 22:691.  If the legislature had intended to limit the application of the VPL to the Standard Fire Policy, it could have specifically referred in Section 22:695 to the Standard Fire Policy, a term with a specific definition in Section 22:691, or simply added the language of 22:695 to 22:691. Instead, the legislature opted for the broader term "under any fire insurance policy," which the Court views as an indication that the VPL was not restricted in its application to the Standard Fire Policy.  Thus, the *Consolidated Companies* court's conclusion that satisfaction of Section 22:691(E) means escape from Section 22:695 is not supported by the structure of the

24

statute.

Furthermore, the Court disagrees with this decision for another reason.  The *Consolidated Companies* court simply read the Standard Fire Policy provisions into a multi-peril policy under Section 22:691.2.  That provision says, in relevant part, that when "the policy forms used are not equivalent to or do not exceed the terms of the standard fire policy, all of the provisions of the standard fire policy shall become a part of the policy . . . ."  La. Rev. Stat. § 22:691.2(B).  Having read the Standard Fire Policy into the contract at issue, the court said that the four conditions in Section 22:691(E)(2) were necessarily satisfied, and the policy did not have to comply with Sections 22:691(A), (B), (F), and 22:695.  However, Section 22:691.2(C) does not say that when the provisions of the Standard Fire Policy are, as a matter of law, read into a policy that covers the peril of fire, coverage as to other perils can be inconsistent with the terms in the Standard Fire Policy.  Further, one of the four requirements in Section 22:691(E)(2), which the court found to be satisfied, is that "such policy or contract is complete as to all of its terms without reference to the standard form of fire insurance policy or any other policy."  La. Rev. Stat. § 22:691(E)(2)(3).  The court admitted that the policy in issue was not complete without reference to the Standard Fire Policy

25

because the court had to read the Standard Fire Policy into the policy under Section 22:691(E)(2).  That is plainly inconsistent with the language of Section 22:691(E)(2).  For this reason also, the Court declines to follow the holding in *Consolidated Companies*.  Finally, the Court notes that, while the Fifth Circuit summarily affirmed the district court's decision, *see In re Consolidated Cos.*, 106 F.3d at 396, its decision in *Real Asset Management* predated *In re Consolidated Companies*, and under Fifth Circuit jurisprudence the earlier decision controls.  *See, e.g., Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006) ("The rule in this circuit is where two previous holdings or lines of precedent conflict the earlier opinion controls and is the binding precedent in this circuit . . . .").

For all of the foregoing reasons, the Court concludes that the legislature intended homeowner's policies, so long as they cover the peril of fire, to be governed by the VPL.  The Court reaches this conclusion mindful that the ambiguous language of the VPL cries out for legislative clarification.  Nevertheless, in its absence, Louisiana's rules of statutory construction, the relevant federal and state jurisprudence, and common sense compel the Court's holding that the VPL applies to covered perils other than fire.  Therefore, to the extent plaintiffs allege that their total loss was sustained entirely by a covered peril, they may be

26

able to state a claim under the VPL.

   **D.   The *Chauvin* Decision**

   Defendants next contend that plaintiffs do not state a claim under the VPL because of this Court's decision in *Chauvin*, 450 F.Supp.2d at 660.  To the extent plaintiffs allege that the VPL entitles them to the full value of their policies, regardless of the proximate cause of their total losses, so long as a covered peril caused some loss to their property, the Court finds that these claims are fully disposed of by the reasoning in *Chauvin*, which the Court adopts and applies in full here.  Therefore, the Court grants defendants' motions to dismiss plaintiffs' claims that are predicated on the theory that plaintiffs are entitled to the full value of their policies so long as a covered loss caused some loss to their property.

   **E.   Defendants' Other Arguments**

   Defendants Allstate, Auto Club, Lafayette, and State Farm rely on their pleadings in *Chauvin*, which raised three other grounds upon which they asserted that the Court should dismiss plaintiffs' claims.  There, defendants contended that plaintiffs' interpretation of the VPL would violate Louisiana's filed rate doctrine, would violate both the Louisiana and United States constitutions, and is necessarily preempted by federal law under the National Flood Insurance Act.  Because those arguments were

based on the assumption that a plaintiff's total loss was caused by damage from both covered perils and non-covered perils, namely floodwater, the Court finds those arguments irrelevant to the surviving claims, which are asserted by plaintiffs who allegedly suffered a total loss that was proximately caused by only a covered peril.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss plaintiffs' claims under the VPL that are predicated on the theory that the VPL applies when any covered loss contributed to a total loss and DENIES defendants' motions to dismiss plaintiffs' claims under the VPL that are predicated on the theory that the VPL applies when a covered peril caused the total loss.  The Court also DENIES the parties' motion to stay this litigation.

New Orleans, Louisiana, this  26th  day of February, 2007.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT COURT